IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MARI A. THYGESEN, | ) |
| | ) |
| Plaintiff, | ) |
| | )  6:14-cv-00504-JO |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of | )  OPINION AND ORDER |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

JONES, J.

Plaintiff Mari Thygesen appeals the Commissioner's decision to deny her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

### PRIOR PROCEEDINGS

Thygesen filed a previous claim alleging disability from hypersensitivity to chemicals in environmental substances including molds, dust, fumes, and odors. The Commissioner denied that application when an ALJ determined that Thygesen was not disabled at any time up to and including September 23, 2004. Admin. R. 13, 72-85. That decision created a presumption of continuing nondisability which Thygesen must overcome by demonstrating that her condition changed since the decision. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

1 - OPINION AND ORDER

In her present claim, Thygesen alleged disability beginning October 1, 2004, one week after the previous determination that she was not disabled. She claimed the same hypersensitivity to chemicals and newly developed sensitivity to electromagnetic fields. Admin. R. 13, 166, 185. Thygesen's insured status under the Social Security Act expired on June 30, 2009. Admin. R. 15. She must establish that she became disabled on or before that date to prevail on her claim. 42 U.S.C. § 423(a)(1)(A). *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). Accordingly, the relevant period for the present appeal runs from October 1, 2004 through June 30, 2009.

The ALJ applied the five-step disability determination process described in the regulations. Admin. R. 13-21. The ALJ found that, during the relevant period, Thygesen's ability to perform basic work was limited by multiple chemical sensitivity disorder ("MCS") and somatoform disorder. Admin. R. 15. The ALJ determined that, despite her impairments, Thygesen retained the residual functional capacity ("RFC") to perform work at all levels of exertion, but could not work around new carpets or in environments that involved any exposure to molds or significant exposure to dust, odors, fumes, or gases. In addition, the ALJ found Thygesen could only work in situations where she could avoid contact with the public and limit interactions with coworkers to brief, superficial contact. Admin. R. 17.

The vocational expert ("VE") testified that a person with Thygesen's vocational factors and RFC would be able to perform the activities required in occupations such as small products assembler and meter reader which represent approximately 90,000 jobs in the national economy. Admin. R. 20-21. The ALJ concluded that Thygesen had failed to show that she was disabled during the time that is relevant for her claim. Admin. R. 21.

\\\

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence need not be a preponderance; it is such relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record, even if another rational interpretation is also supported. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Thygesen contends the ALJ improperly discounted the credibility of her subjective statements and rejected the opinion of David Buscher, M.D. As a result, Thygesen claims, the ALJ reached an RFC assessment that did not accurately reflect all of her limitations.

### II. Credibility Determination

In her most recent application, Thygesen alleged she could no longer work due to "chemical/electrical sensitivity." Admin. R. 185. She alleged she could not work around mold, certain fibers, mothballs, electrical devices, or magnetic fields. Admin. R. 202-203. Thygesen said that her chemical sensitivities remained about the same as they were when the previous ALJ issued his decision. Admin. R. 43. Thus, she continued to be affected by mold and strong odors from formaldehyde, cleaning products, laundry products, bleach, dust, road fumes, propane, gasoline, and diesel fumes. Admin. R. 45.

3 - OPINION AND ORDER

In addition, Thygesen said she had developed electrical hypersensitivity beginning in about May 2010. Admin. R. 202-203. She said she reacted to the electromagnetic fields emitted by power lines and electrical appliances such as refrigerators, stoves, electric lighting, computers, and cell phones. Thygesesn said exposure to such electromagnetic fields caused a sensation of being pulled by magnets, a prickly feeling on her head, clenching of the jaw and stomach, tightness of her body, and sometimes nausea. Admin. R. 43-44, 202.

The ALJ found Thygesen's chemical sensitivities to molds and other environmental substances well documented. In contrast, he found no medical evidence from the relevant period of time that suggested functional limitations from exposure to electomagnetism. Admin. R. 17. Accordingly, the ALJ concluded that Thygesen had failed to establish hypersensitivity to electromagnetic exposure as a medically determinable impairment. This conclusion is consistent with Thygesen's testimony that the sensations she felt around electromagnetic fields commenced in about May 2010, nearly a year after the expiration of her insured status. Admin. R. 202-203.

The ALJ found that the impairments supported by the medical evidence, *viz.* MCS and somatoform disorder, could be expected to produce the symptoms she alleged. He found Thygesen's statements about the intensity and limiting effects of her symptoms, however, not entirely credible. He discounted Thygesens claims of limitations greater than those identified in the RFC assessment and her claim that her limitations precluded all work. Admin. R. 17-19.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and a convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not

arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ must consider all the evidence in the case record when assessing a claimant's credibility, including objective medical evidence, medical opinions, treatment history, daily activities, work history, third party observations of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284; SSR 96-97p, 1996 WL 374186, at *5. Additionally, the ALJ may consider ordinary techniques of credibility evaluation, such as inconsistent statements, testimony that appears less than candid, and an unexplained failure to follow a prescribed course of treatment. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 587, 602-04 (9th Cir. 1989).

The ALJ considered the proper factors here. As noted previously, he found that the medical evidence did not support the limitations Thygesen claimed from electromagnetic fields. He considered the findings of Dr. Buscher which were generally unremarkable or mild and did not suggest functional limitations. The ALJ discounted Dr. Buscher's disability opinion as discussed more fully below. The ALJ also considered the lay witness statements, giving them partial weight. Essentially, the ALJ found that Thygesen's limitations are related to exposure to certain substances which can be avoided by removing them from the environment in which she works. Admin. R. 19. For example, the ALJ noted that in Dr. Buscher's examination room, where exposure to allergy-triggering substance is controlled, Thygesen exhibited no observable health problems other than allergy circles under her eyes and post nasal drip. The ALJ reasonably concluded that Thygesen failed to demonstrate functional limitations that would impede working in an environment consistent

5 - OPINION AND ORDER

with her RFC assessment. Accordingly, the ALJ properly discounted her subjective claim that she would be unable to work under those conditions.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific to satisfy me that the ALJ did not arbitrarily reject Thygesen's subjective statements. His reasoning is clear and convincing. Accordingly, the ALJ's credibility determination was not erroneous. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### III. Dr. Buscher's Opinion

Dr. Buscher began treating Thygesen for environmental sensitivities in 2002. Admin. R. 290. In March 2003, testing showed that Thygesen was allergic to several species of mold, animal dander, dust mites, and some food items. Admin. R. 284. Dr. Buscher noted that Thygesen exhibited allergic circles under her eyes and post nasal drip. Thygesen told Dr. Buscher that she was experiencing an elevated heart rate, but a 24-hour heart monitor yielded normal results. Admin. R. 290. Dr. Buscher did not identify specific functional limitations or work activities that Thygesen could not do, but in July 2004, wrote that Thygesen was "medically disabled for the foreseeable future." Admin. R. 280-81. This was the extent of Dr. Buscher's treatment records when the previous ALJ determined that Thygesen was not disabled as of September 23, 2004. Admin. R. 13, 72-85.

Dr. Buscher next saw Thygesen in April 2005, six months after the alleged onset of disability for her current claim. He observed that she had mild allergic circles under her eyes, slightly swollen nasal mucosa, and her tongue was white. Otherwise, his objective findings were generally unremarkable. Thygesen reported that she felt better overall since she began avoiding gluten, but recent exposure to wood smoke had provoked ear blockage, swelling in her ankles, and anxiety. Dr.

Buscher did not identify any functional limitations or work activities Thygesen could not do, but again said that she was too sensitive to persist in any conceivable work environment. Admin. R. 273.

When Dr. Buscher saw Thygesen next, in May 2006, she reported that she had lost most of her food sensitivities, her allergic reactions were not as severe, and her subjective cognition and emotional stability were improved. On examination, Dr. Buscher obtained generally normal clinical findings and noted that Thygesen appeared healthy without any acute illness. Nonetheless, he said she suffered "continued chronic disability due to MCS and allergies." Admin. R. 272.

Dr. Buscher saw Thygesen in September 2007 for treatment of a yeast infection, and spoke to her in October 2007 about a mild vitamin D deficiency. Admin. R. 263, 264. She reported that she had tried to work for a government park service but had experienced sensitivities to wood smoke and latrine-cleaning chemicals. Admin. R. 264. On June 30, 2009, Thygesen's insured status under the Social Security Act expired, and Dr. Buscher did not see her again until September 15, 2009. Admin. R. 259-260. The ALJ gave Dr. Buscher's disability opinion little weight. Admin. R. 18.

An ALJ may discount a treating or examining physician's opinion that is inconsistent with the opinions of other physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If the opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). Here the ALJ provided an adequate explanation under either standard for the weight he attributed to Dr. Buscher's opinion.

The ALJ gave Dr. Buscher's opinion diminished weight, in part, because Dr. Buscher saw

7 - OPINION AND ORDER

Thygesen infrequently, just a handful of times over a 10-year period. Admin. R. 18. During the infrequent visits, he obtained generally unremarkable findings. This treatment record does not provide a basis from which Dr. Buscher could accurately assess the persistence or severity of Thygesen's symptoms. His findings do not support functional limitations in a controlled environment within the restrictions of the RFC assessment. An ALJ can reject a physician's opinion that is unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).

Based on the absence of clinical findings, the ALJ reasonably inferred that Dr. Buscher relied uncritically on Thygesen's subjective complaints in reaching his disability opinion. An ALJ is entitled to reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Furthermore, even Thygesen's subjective reports to Dr. Buscher do not appear to support his disability opinion. Instead of reporting a worsening of symptoms after the previous decision, Thygesen reported that she was doing better overall, had lost most of her food sensitivities, and had improved cognition and emotional stability. Admin. R. 18.

The ALJ's reasoning in determining the weight to give Dr. Buscher's opinion is clear and convincing and based on rational inferences drawn from substantial evidence in the record. The ALJ's evaluation of Dr. Buscher's opinion must be upheld, even if the record could reasonably be interpreted differently. *Batson*, 359 F.3d at 1193.

## VI. Vocational Evidence

Thygesen contends the ALJ erroneously elicited testimony from the VE with hypothetical assumptions that did not accurately reflect all of her functional limitations. The additional limitations Thygesen claims are supported only by evidence the ALJ properly discounted, including

Thygesen's subjective statements about her limitations and Dr. Buscher's disability opinion. An ALJ is not required to incorporate limitations he found unsupported by the evidence in the record. *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1175-76 (9th Cir. 2008). *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005); *Batson,* 359 F.3d at 1197-98; *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir. 2001). Accordingly, Thygesen's challenge to the vocational evidence must be rejected as well.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this 28th day of July, 2015.

Robert E. Jones, Senior Judge
United States District Court

9 - OPINION AND ORDER